## Abner M. Miller, Plff. in Err., v. Elizabeth G. Eshleman.

Where the testimony is so conflicting that a jury might find either way upon an issue of fact, this court will not disturb their verdict thereon, unless there was error in the treatment of the case by the court below.

Where a deed has passed from the dominion of the grantor its delivery will be presumed; but if it remain with the grantor the onus of proving delivery rests with the party claiming under it.

Declarations and acts of a party in possession of land as to his title made and done against his interest,—are admissible in evidence to show his want of title.

The wrong reception of trifling and insignficant evidence will not justify a reversal.

In ejectment the burden of proving delivery of a deed under which defendant claims title is upon him, and not upon plaintiff who claims by title paramount.

(Decided October 4, 1886.)

NOTE.—Where a deed remains in the possession of the grantor there is no presumption of delivery. Duraind's Appeal, 116 Pa. 93, 8 Atl. 922. But if there be some evidence of the delivery, the question is for the jury, though so found. Stoney v. Winterhalter (Pa.) 10 Cent. Rep. 361, 11 Atl. 611. The same is true where found in a safe used in common by the grantor and grantee (Cummings v. Glass, 162 Pa. 241, 29 Atl. 848); or where left with a third person for the grantee (Arrison v. Harmstead, 2 Pa. St. 191). But the mere leaving with the third party is not sufficient. Unruh v. Lukens, 166 Pa. 324, 31 Atl. 110; Epley v. Witherow, 17 Phila. Leg. Int. 356. Possession by the grantee is prima facie evidence of delivery. Rhine v. Robinson, 27 Pa. 30; Cable v. Cable, 146 Pa. 451, 23 Atl. 223. And the same is true where the deed has been recorded (Rigler v. Cloud, 14 Pa. 361); though the question is one for the jury (Bush v. Genther, 174 Pa. 154, 34 Atl. 520). As to delivery of deed to third person, see editorial note to Munro v. Bowles, 54 L. R. A. 865, containing a full presentation of the authorities on that subject.

Error to the Common Pleas of Lancaster County to review a judgment on a verdict in favor of plaintiff in an action of ejectment.    Affirmed.

This action was brought by Elizabeth G. Eshleman against Dr. A. M. Miller for the undivided half of about one acre of ground in Bird-in-Hand, Lancaster county.    In 1854, John Gyger, plaintiff's intestate, purchased a tract of land, of which the premises in dispute is a part, and entered into possession of the whole tract.    His son, Jesse Gyger, died in 1853, leaving surviving him, his wife, Mary, and his son, Abijah D. Gyger. Shortly thereafter John Gyger built a house on the premises in dispute, and he and Jesse's widow, Mary, lived together thereon until her death.    In 1859 Mary Gyger married Dr. A. M. Miller.    From that time John Gyger and Dr. Miller and wife lived together on the premises in dispute until Mary's death in 1867. Dr. Miller afterwards married and he and his wife and John Gyger resided there together until the latter's death.    John Gyger died intestate in 1870, leaving as his heirs his daughter, Elizabeth G. Eshleman, and a grandson, Abijah G. Gyger, son of Jesse Gyger, deceased.

October 29, 1857, John Gyger executed a deed of the land in dispute to Mary Gyger.

Habendum.    "In trust, however, for the use of the said Mary Gyger during the time she shall remain the widow of the said Jesse Gyger, deceased, and from and after her marriage or decease, then in trust for the use of Abijah D. Gyger, the only son and child of the said Jesse Gyger and Mary Gyger, and to his heirs and assigns forever in fee."

This deed was recorded in 1870, after the death of John Gyger.    Plaintiff claims that this deed was never delivered by John Gyger to the grantee therein named, which is the main fact in dispute in this case.

At the trial in the court below, LIVINGSTON, J., charged the jury, *inter alia,* as follows:

In order to enable Mrs. Eshleman to recover in this action, it is necessary for her to show, by proof, to the jury:  (1) that

she has title to the property she claims; (2) that defendant was in possession of the premises she claims when she brought this suit.

Where, however, there is no testimony offered in the cause that the defendant was not then in possession, as in this cause, the return of the sheriff, of the service of the writ upon the defendant, as in the case now trying, is prima facie evidence of the defendant being in actual possession of the premises, and may be taken as sufficient proof of the fact.

In addition to this proof, however, the plaintiff has produced other testimony, showing that Dr. Miller was at that time, and still is, in actual possession of the premises now claimed by Mrs. Eshleman.

In this case, therefore, it may be taken as proved that defendant was in possession of the premises now in dispute, when this action was commenced, so that we need not again refer to this point.

In this action of ejectment, the plaintiff, if she recover at all, must recover on the strength of her own title, as it was when she commenced this suit. She cannot recover upon or by reason of the weakness of the title of her adversary, Dr. A. M. Miller.

In order to prove her title to this property, the plaintiff produced in evidence a deed from Benjamin Groff's administrators to John Gyger, dated March 1, 1854, and duly executed and recorded, for a tract of land containing 43 acres and 104 perches, of which the land in question forms a part. And also offered testimony for the purpose of showing that John Gyger died on the 10th of April, 1870, intestate; that, at the time of his death, his home was, as it had been for years previous, at Bird-in-Hand, on the premises now in dispute; that at the time of his decease he left no widow, but left surviving him one daughter, Elizabeth G. Eshleman, the plaintiff, and one grandson, Abijah D. Gyger, the son of his deceased son, Jesse Gyger, to whom, on the death of John Gyger, the premises in dispute, by virtue of the intestate laws of Pennsylvania, did descend and come, as tenants in common, each being entitled to one equal undivided half part thereof—this suit being brought to recover the equal undivided half part thereof claimed by Mrs. Eshleman. The plaintiff then rested.

The defendant then stated his side of the case to you. He showed you that, as plaintiff showed, John Gyger was at one time the owner of the property in dispute, but stated that at the time of his decease he did not own or possess it, he having long before that time sold it to Mary Gyger, and he produces in evidence a deed from John Gyger to Mary Gyger, for the premises in dispute. This deed is dated October 29, 1857, but was not recorded until July 16, 1870, some three months after the death of John Gyger. He next offered in evidence a deed from Abijah D. Gyger and wife to Dr. A. M. Miller, the defendant, dated March 30, 1871, duly executed and recorded March 31, 1871, for the property in dispute; and having produced this testimony, the defendant then rested.

After this was done, plaintiff, alleging that, although John Gyger did sign and seal a deed dated October 29, 1857, which is here produced, it never was delivered to her, but remained and continued to be in his own possession and under his own exclusive control, until long after the death of the grantee therein named, Mary Gyger, which occurred in June, 1867; that it in fact remained in his own custody and possession, and under his sole control, until he had sold the property described therein for $7,000 to Dr. Miller; and that shortly before the death of John Gyger, which occurred on April 10, 1870, he gave it to Dr. Miller, the defendant, for the purpose of copying from it a description of the property into the deed to be made between John Gyger and A. M. Miller, which was to have been delivered on April 1, 1870; that John Gyger continued to reside on and be in possession of the property until the time of his death, at which time it became part of his estate, and, as such, descended and came to the plaintiff and A. D. Gyger, as his heirs, under the intestate laws; and produced testimony, which you will remember, for the purpose of proving those allegations.

After which the defendant offered evidence for the purpose of showing a delivery of the deed to Mary Miller in her lifetime, of her residing on the property with her husband, Dr. Miller, of the property being assessed in her own name, of her paying taxes, of tax collectors being directed by John Gyger, the grantor, to call on her for the tax for this property, of his declaring

he had assigned this property to her, of his declarations that he built or was going to build this house for her, that he was going to give it to her, that he had declared he had given the deed to her, that she had it in her possession, and showed it to others herself, and to others she declared she had it—so that the real question at issue here, and the vital turning point or pivot in the case now trying is, Was or was not the deed of October 29, 1857, delivered by John Gyger to Mary Gyger, the grantee?

What is a deed, and when does it pass title?

In its most comprehensive sense, a deed is a written contract or undertaking, signed, sealed, and delivered by the party thereto. For the conveyance of real estate, it must be signed, sealed, and delivered by the grantor.

As to its execution: The testimony of a subscribing witness, that he was called on to sign as a witness, is sufficient to go to the jury, as from it they may infer the execution of the deed. In this case, Charles R. Frailey, a subscribing witness, tells you he wrote the deed of October 29, 1857, from John Gyger to Mary Gyger, and was a witness to its execution, but the signing and sealing of this deed are not here questioned. Was this deed ever delivered to Mary Gyger, the grantee therein named?

Our supreme courts have said: The date of a deed is prima facie evidence of the date of delivery, when found in possession of the grantee, but not conclusive; that the execution, acknowledgment, and recording of a deed, are prima facie evidence of delivery; that the recording of a deed, by the grantor, is not an absolute delivery, but only evidence of it; that possession of a deed by the grantee is prima facie evidence of delivery; that a delivery to a third person with instructions to hand over the deeds to the grantee, or to record the same, after the grantor's death, which is done, is a good delivery; that a delivery to a third person by the grantor, at the request of the grantee, passes the title, though the deed be found among the grantor's papers at his decease; that the presumption of delivery arising from the recording of a deed may be rebutted. Where a grantor executes and acknowledges a deed, but retains it in his own possession until after his death, the fact that the grantee subse-

quently obtained and caused it to be recorded will give it no effect for want of delivery.

If a deed pass from the control of the grantor, with a declaration that it is delivered for the use of the grantee therein named, the delivery would be complete.

Delivery may be made by words alone, or by acts alone, or by both together, but there must be sufficient to show an intention to pass the title; by acts alone is by doing something and saying nothing, as by taking the deed and handing it to the grantee, who receives it; therefore a dumb man may deliver a deed; by words, without acts, is as if the deed be lying upon a table, and the grantor says to the grantee, "Take that as my deed,"—that would be a sufficient delivery; or, by both together —as if the grantor would hand the deed to the grantee, saying, "I deliver you this as my deed;" or "Take this as my deed." This would be a good delivery.

Where an instrument is formally executed and delivered, and there is nothing to qualify the delivery but keeping the deed in the hands of the executing party, or to show that he did not intend it to operate immediately, it is an effectual delivery. A delivery is essential to the proper and legal execution of a deed, and that delivery may, as we have seen, be to the party, to one authorized by the party to receive it, or to a stranger for the use of the party. The delivery is complete when the grantor has parted with his dominion over it, with intent that it shall pass to the grantee, provided the latter assents to it, either by himself or his agent. No form of words is necessary, as we have seen, if the act is done.

Whether or not there has been a delivery of a deed is generally a question for the jury, and in the case now trying it will be for this jury to say, by their verdict, whether or not the deed of October 29, 1857—John Gyger to Mary Gyger—ever passed from the dominion of John Gyger; whether it was ever delivered by him to Mary Gyger. Was there ever a delivery of it by John Gyger, the grantor, by acts alone, by words alone, or by both together, to her or to anyone for her? I shall not repeat the testimony to you; it is voluminous.

You will remember Costner says she and Gyger were talking;

she said she had no deed, he said he would give her one; and in another conversation she told him in Gyger's presence that Father had given her a deed for it; he said nothing, but laughed; she said at her death it was to go to Abijah; that Steacy said John Gyger told him he had given Mary the property at the Bird, that is, as long as she was Jesse Gyger's widow, and added, after she married, it was Abijah's, she forfeited her right. He did not remember that he said he had given her a deed. After her marriage, he told him she had forfeited her right and now the property is Abijah's.

Benjamin Herr says Gyger told him he built the house for Mary; he would not have built it only on her account; said he had made a deed for Mary. He was then offering to sell him the property.

A. D. Gyger, in other proceedings, swore that John Gyger told him that the property at the Bird belonged to him, and he wanted him to draw up some writings in case he did not get back from the army, as to what he should do with the property; that he drew up such paper, but destroyed it; that he told him how the deed was written—the property was given to his mother as long as she was the widow of his father, and at her marriage it was his; told him he had given her the deed; that he could not sell the property without Abijah signing a release for it. Abijah said he was satisfied he should sell it, and after he had articled with Miller he told him what he had done. You will remember what his testimony then was. Gillespie tells you that he saw Mary Gyger have the deed; saw her come into the hotel at Bird-in-Hand, pull the deed out of her bosom in the hotel dining-room, throw it down on the dining table and say: "There is my deed, read it." You will remember his testimony.

You will also remember all the other testimony produced by Dr. Miller, Mr. Byler, Mr. Johns, and others, which relates to this point, and consider it all.

You will also remember that it is shown here, that about the beginning of the year 1870—you will recollect the date—this deed was in the possession of John Gyger; that he had by articles of agreement sold the property to Dr. Miller for $7,000— you have heard the agreement read—and that he gave Dr. Mil-

ler this deed so that he might take from it a description of the property to put in the deed he was to get on April 1, 1870.

That Abijah now swears that the first time he saw the deed was when he got it from Dr. Miller; that he got it from Dr. Miller after John Gyger's death, and hadn't it recorded till three months after the death of John Gyger; that the Doctor, after John Gyger's death, said to Abijah: "I have the deed for that property at Bird-in-Hand, and if you will let me have the property for $6,000, I'll give you this deed." He had bought it from John Gyger for $7,000, and John Gyger had told him not to let him—Abijah—see the deed; he told him John Gyger gave him the deed to make a deed from; that his mother told him John Gyger had often promised to give her a deed, but had never done so; she told him this several times after her marriage with Miller, when they were living together; that he had heard Dr. Miller say, in presence of counsel, that he never saw this deed until John Gyger gave it to him to make a copy from it. He also heard him say he had never seen the deed in Mary Gyger's (then Miller) possession. You will remember all he said with reference to this deed respecting its delivery. He also tells you, that what he testified in the former proceedings was not true, that he so testified in consequence of an arrangement with Dr. Miller and the counsel at that time; that his testimony then was false; he was sorry to say it was all fixed up, and what he said as to his grandfather acting as his agent was false.

You will recollect all the testimony. It is conflicting, and you must pass upon it. The witnesses are competent. Their credibility is for you; whether you will believe what Abijah D. Gyger swore to in the former proceedings was, as he says, false, and what he swears to now, true, or the reverse.

This deed was in possession of Gyger long after the decease of the grantor. He sold the property to Dr. Miller for $7,000. Did Dr. Miller buy it from him as the agent of Abijah? If this deed was ever delivered to Mary Gyger by John Gyger, John Gyger could not sell it to Dr. Miller himself and give him title to it; the title would be in Abijah. If Miller bought it from him, as Abijah's agent, for $7,000, and Abijah knew and had permitted such sale, would he be likely to take Abijah's own deed

to him and offer to give it to him, if he would sell him the property for $6,000, if he knew the deed had been delivered to his wife, Abijah's mother, and that the property under it was Abijah's, and Abijah knew he had already bought it from his agent for $7,000?

If you find from all the evidence that this deed of John Gyger to Mary Gyger, dated October 29, 1857, was delivered to Mary Gyger; that John Gyger parted with his dominion over it—then and in such case it would pass the title to Mary Gyger, and, on her marriage, to Abijah, and the deed would be a valid deed, and your verdict should be for Dr. Miller, the defendant.

But if you find, from all the evidence, that this deed of October 29, 1857, never was delivered to Mary Gyger, that John Gyger never parted with his dominion over it, but kept it in his own possession, then, and in such case, the deed would pass no title to Mary Gyger or Abijah D. Gyger; and in such case, the property would belong to the estate of John Gyger and at his decease would descend and come to Mrs. Eshleman and A. D. Gyger, as his heirs at law, and your verdict should be for Mrs. Eshleman, the plaintiff.

Plaintiff presented, *inter alia,* the following points:

2. If the jury believe that John Gyger executed this deed, and kept it in his possession until a short time before his death, then and in that case it conveyed no title to Mrs. Miller or Abijah D. Gyger, even though he told a number of persons that he had given or transferred the property to Mrs. Miller.

*Ans.* Affirmed. First assignment of error.

4. Unless the jury believe that the deed of October 29, 1857, from John Gyger to Mary Gyger, was actually delivered to Mary Gyger, they must find for the plaintiff.

*Ans.* Affirmed. Second assignment of error.

Defendant presented the following points:

1. The deed from John Gyger to Mary Gyger, dated October 29, 1857, signed, sealed, and acknowledged by John Gyger, and properly witnessed, and purporting to have been sealed and delivered by John Gyger, is presumed in law to have been delivered to the grantee, Mary Gyger, and to have been accepted by

her on the day of its date; and the burden of proof that it was not then delivered rests upon the plaintiff.

*Ans.* This is the law where a deed has once passed from the hands and dominion of the grantor. It is otherwise where the deed remains in the possession of the grantor. In such case there is no presumption of delivery at the time of the date of the deed. In such case the onus, the burden of proving a delivery, is upon the party who alleges and claims there was a delivery. Third assignment of error.

2. Whether or not the said deed was delivered by John Gyger to Mary Gyger, must be determined by declarations, acts, and occurrences proved to have taken place in the lifetime of John Gyger; and no declarations, acts, or occurrences of any person or persons, that took place after John Gyger's death, can be used to determine the said question of delivery.

*Ans.* This point we affirm, except as to the acts and conversations of and between Dr. Miller and A. D. Gyger, with reference to the matters spoken by and between them at Abijah's place, on the Pike. Fourth assignment of error.

3. If the jury believe from the evidence that John Gyger caused the land described in the deed from him to Mary Gyger to be surveyed and set off from a larger tract, with the intention to convey the same to Mary Gyger; and, in pursuance of that intention, he executed the said deed, and directed the assessor to assess the property to Mary Gyger, and directed that she should pay the taxes; and that it was assessed to her; and that she did pay the taxes during her lifetime; and that he treated the property as hers, and she treated it as hers, and both of them understood that it was hers—then the property was hers in law, and her title thereto was perfect, even if she never had the deed in her actual possession.

*Ans.* The jury will consider all the facts and circumstances stated in this point, where proved, in deciding whether or not there was a delivery of this deed; but without a delivery of this deed her title would not be perfect. Fifth assignment of error.

4. If the jury believe from the evidence that Mary Gyger was informed by John Gyger of the execution of the said deed, and was informed by him that the property was conveyed to

her and was hers, and that he and she both considered it and treated it as hers, her title to the same was good and valid; and if John Gyger thereafter had the deed in his possession, he held it for her use, for the purposes expressed in the deed.

Refused. Sixth assignment of error.

At the trial plaintiff offered to prove by Abijah D. Gyger "that after the death of John Gyger, the defendant, still having possession of the deed, conceived the idea of getting the property for a less price than he had agreed to pay John Gyger in the agreement of September 20, 1869; and with this purpose in view went to see Abijah D. Gyger, and proposed to pay him $6,000 for his, Abijah D. Gyger's deed, for the premises in controversy. Thereupon the deed from Abijah D. Gyger, the son of Mary Gyger, the grantee in the said deed, and his wife, dated March 30, 1871, was executed and delivered to the defendant."

Allowed. Seventh assignment of error.

"By an arrangement with him (Dr. Miller) he testified before the examiner, in the proceedings for decree of specific performance, that John Gyger told him, just before he went into the service, that the property at Bird-in-Hand belonged to him (witness) and he should draw up some writing, in case he did not get back, saying what he (John Gyger) should do with the property; that he (John Gyger) had told witnesses that he had given a deed to his mother for the property and that he asked witness's permission to sell the property; that witness gave permission, and that after John Gyger had entered into articles with Dr. Miller for the sale of the property, John Gyger told him (witness) that he had sold the property, and asked whether he was satisfied with the sale, and he said he was; and to show further that these statements were not true."

Allowed. Thirteenth assignment of error.

Defendant offered in evidence the record of the proceedings in the Estate of John Gyger, deceased, in the orphans' court of Lancaster county, instituted by Elizabeth G. Eshleman, administratrix, for the purpose only of showing that the petition was dismissed January 14, 1871, and that the proceedings were then apparently ended.

Disallowed. Twenty-first assignment of error.

Defendant offered to prove by Dr. Miller that, in the conversation testified to by Abijah D. Gyger in which he stated that Dr. Miller had said he had not seen the deed in his wife's possession, Dr. Miller said he had seen the deed in his wife's possession frequently.

Disallowed.    Twenty-third assignment of error.

Defendant offered in evidence the answer of Dr. Miller to the citation in proceedings in surrogate's court.

Disallowed.    Twenty-fourth assignment of error.

Plaintiff's counsel put the following questions to Abijah D. Gyger:

"What conversation, if any, did you ever have with your mother with regard to the delivery of the deed of October 29, 1857?"

Admitted.    Eighth assignment of error.

"Did, or did not, Dr. Miller, or any person in his presence, say that the only way would be to make it appear that John Gyger acted as agent of Abijah D. Gyger in the sale of the property to Dr. Miller?"

Admitted.    Ninth assignment of error.

"Did or did not the testimony conform to what you had talked of previously?"

Admitted.    Tenth assignment of error

"Did, or did not, Dr. Miller say at one or more of these conversations that he could not prove that the deed was ever in his wife's possession, or in her possession before she became his wife?"

Admitted.    Eleventh assignment of error.

(Relating to the estate of his mother.)    "State whether or not she had any private estate of her own."

Admitted.    Twelfth assignment of error.

"Was it, or was it not, agreed between yourself and Dr. Miller, and the counsel representing you, that your answer should declare that, in the sale of this property to Dr. Miller, John Gyger acted as your agent, and was it not agreed at the same time, between the same parties, that Dr. Miller in his answer should swear to that same alleged fact?"

Admitted.    Fourteenth assignment of error.

"What did Dr. Miller, the defendant, say at the office of Landis or Price, when he was asked whether he had ever seen this deed in possession of his wife, Mary Miller?"

Admitted. Fifteenth assignment of error.

"State whether or not your half-sister, Mary Agnes Miller, daughter of Dr. Miller and your mother, mentioned in the agreement between you and Dr. Miller, for whose benefit the sum of $4,000, a part of the purchase money or consideration mentioned in said agreement, was charged, died unmarried, intestate, and without issue."

Admitted. Seventeenth assignment of error.

(Referring to his half-sister.) "When did she die?"

Admitted. Eighteenth assignment of error.

Plaintiff's counsel put the following question to Benjamin Herr:

"Was Abijah present when Mr. Gyger offered to sell you this property?" Admitted.

*Ans.* "He was not present when he offered to sell me the property, but he was present at Rhoades' when I agreed to take it; Mr. Gyger then told me he had promised Dr. Miller the first chance; Abijah was present then; he offered me the property several times before; then Abijah was not present; he offered me the property in town at the bank." Sixteenth assignment of error.

Defendant's counsel put the following questions to Abijah D. Gyger:

"Was not your grandfather, John Gyger, a very wealthy man, worth a couple of hundred thousand dollars?"

Disallowed. Nineteenth assignment of error.

"Did not you inherit about $100,000 from John Gyger shortly before you made the deed in evidence to Dr. Miller, and just before you testified in the orphans' court proceedings, and have you not squandered it and been reduced to poverty?"

Disallowed. Twentieth assignment of error.

Defendant's counsel put the following question to Dr. Miller:

(Referring to conversation that Abijah D. Gyger testified to between himself and Dr. Miller.) "Tell us what you told him that John Gyger had told you, and what Abijah told you."

Disallowed. Twenty-second assignment of error.

Verdict was rendered for plaintiff, and defendant took this writ of error.

*H. M. North* and *J. W. Johnson,* for plaintiff in error.—The court, in answer to plaintiff's points and defendant's points, on the subject of the delivery of the deed, presents but one rule; and that is that the deed, to be valid, must have been actually delivered by John Gyger to Mary Gyger, denying that he might retain possession of the deed for her. The rule adopted by the court is not in accordance with the authorities. Doe *ex dem.* Garnons v. Knight, 5 Barn. & C. 692; Scrugham v. Wood, 15 Wend. 545, 30 Am. Dec. 75; Souverbye v. Arden, 1 Johns. Ch. 239; Blight v. Schenck, 10 Pa. 289, 51 Am. Dec. 478; Doe *ex dem.* Lloyd v. Bennett, 8 Car. & P. 124; Diehl v. Emig, 65 Pa. 320; Rigler v. Cloud, 14 Pa. 361.

The court erred in allowing the plaintiff to give in evidence a declaration of Mary Miller, formerly Gyger, that she never had a deed for the property. The alleged declaration was made after she had been married to Dr. Miller, after her ownership had ceased, by reason of her marriage, and the property had passed to Abijah, in accordance with the express terms of the deed, when she no longer had any interest and did not claim any. 1 Wharton, Ev. § 228; Weidman v. Kohr, 4 Serg. & R. 174; Reed v. Dickey, 1 Watts, 154.

*D. G. Eshleman, B. Frank Eshleman,* and *J. H. Brown,* for defendant in error.—As a general rule declarations made by a person in possession of real estate as to his interest or title in the property may be given in evidence against those who subsequently derive title under him, in the same manner as they could have been used against himself before he parted with his possession or interest. Padgett v. Lawrence, 10 Paige, 170, 40 Am. Dec. 232; Beecher v. Parmele, 9 Vt. 352, 31 Am. Dec. 633; 1 Greenl. Ev. § 189; Critchfield v. Critchfield, 24 Pa. 100; 1 Wharton, Ev. § 237; Brolaskey v. McClain, 61 Pa. 146, 167; Sheaffer v. Eakman, 56 Pa. 144; St. Clair v. Shale, 9 Pa. 252.

A grantor in a deed is a good witness to invalidate it. McFerran v. Powers, 1 Serg. & R. 102; Brown v. Downing, 4 Serg. & R. 494.

OPINION BY MR. JUSTICE GREEN:

It certainly must be conceded that there was evidence enough in this case to have sustained a verdict either for the plaintiff or the defendant, and that a court trying the cause would scarcely have felt at liberty to set aside the verdict and grant a new trial, on the theory that any verdict the jury might have rendered was against the weight of the evidence. The chief matter in controversy was the delivery of a deed. Essentially the question was one of fact, and its determination was entirely for the jury. The result depended much upon the credibility of witnesses, which is matter exclusively within the province of the jury. The verdict was against the theory of a delivery of the deed. While there are some facts which, if believed, tend strongly to prove a delivery, there are others of a highly persuasive character tending strongly to prove there never was a delivery. In such a condition of the testimony it is not for this court to interfere, unless there was error in the treatment of the case by the court below. After a careful and patient consideration of the charge, the answers and the entire testimony, we are unable to discover any error requiring a reversal of the judgment.

We think the charge was a very fair, impartial, and entirely correct presentment of the testimony in its various aspects. The theories of both sides were stated, and the leading facts claimed by each in support of his theory were fully exhibited, without the slightest expression of opinion by the learned judge on either side.

It is a mistake to say that he told the jury or even intimated to them that the deed must actually have been delivered into the hands of the grantee by the grantor. On the contrary, he expressly said to them that the question for them to consider was, "Was there ever a delivery of it by John Gyger, the grantor, by acts alone, by words alone, or by both together, to her or to anyone for her?" He had previously defined these methods of delivery and had said: "Where an instrument is formally executed and delivered and there is nothing to qualify the delivery but keeping the deed in the hands of the executing party, or to show that he did not intend it to operate immediately, it is an effectual delivery." As the defendant admitted that he had re-

ceived the deed from the grantor shortly before his last sickness, which was several years after the death of the grantee, who was the defendant's wife, and as the defendant himself contracted with the grantor to buy the property in dispute from him at about the same time, it cannot be questioned that grave doubt arose upon the fact of a previous delivery to Mrs. Miller, upon the undisputed acts and declarations of the defendant himself. But the court gave him the benefit of an instruction to the jury, that they might find a delivery in any of the ways which the law recognizes as sufficient to establish that fact. The learned judge nowhere said that it was necessary to find that the grantor had actually placed the deed in his daughter's hands in order to constitute a good delivery.

Recurring to the several assignments of error, we think as to the first that the answer to the plaintiff's second point was entirely correct, since the point assumes that there never was a delivery; and upon that assumption the conclusion stated was sound, notwithstanding the declarations of the grantor stated in the point.

The answer to the plaintiff's fourth point must be taken in connection with what was said on the subject of delivery in the general charge, and as thus explained an actual delivery was certainly essential to the defendant's claim of title.

The answer to the defendant's first point was certainly correct. The attempt of the point was to cast the burden of proof of nondelivery of the deed to Mary Gyger, upon the plaintiff, who was claiming by title paramount to that deed, and thus relieving the defendant of the burden of proving a fact material to the validity of the title under which he claimed.

The answer was that the point was true, if the dominion of the deed had passed from the grantor, but not if it remained with the grantor. In the latter case the onus rested with the party claiming under the deed, and this is undoubtedly so.

The defendant's second point was affirmed except as to acts and declarations of the defendant, and this exception was properly taken.

The facts set out in the defendant's third point would be consistent with title in Mary Gyger, and the jury were so instructed

to consider them, but they would not be conclusive of her title if there never was a delivery; and that was all the court said, and in this there was no error.

The facts stated in the defendant's fourth point are not all the facts which would be essential to title under the deed in question, and therefore the point could not be affirmed as it stood. They might all exist and yet it might be true that title had not passed and that the grantor's possession of the deed would not be for the grantee's use.

This disposes of the first six assignments of error.

The matter covered by the seventh assignment is only a part of a larger offer of testimony, the whole of which, including the part here referred to, was undoubtedly competent.

As to the eighth assignment, it must be observed that Mary Gyger was the person to whom the deed in question was made, and the subject-matter of her declarations was that it was never delivered to her. Other evidence was given of declarations by her that it had been delivered. Moreover, she was dead and hence could not be called as a witness. If the deed was never delivered, she had no title under it at any time, and her declarations inconsistent with her title could never be given in evidence, if their admissibility depended upon their having been made while her interest existed. On the other hand, if title did pass and she was to be considered in possession under it, the declarations were made while her possession continued. Even if her title had been devested by her marriage, she still continued by her possession to assert her title, and her son does not seem to have challenged it. In these circumstances her declarations cannot be regarded, as to their admissibility, simply as declarations against interest made by a person having an interest which no longer existed at the time the declarations were made. She was still living and the period of her interest was the whole period of her life, subject to defeasance in favor of her son in the event of her marriage. Her son did not choose to assert his right, if he had any, and until he did her interest continued. Her declarations, therefore, during her possession, may be considered as declarations against interest while the interest continued, and therefore clearly admissible.

The ninth, tenth, eleventh, thirteenth, fourteenth, and fifteenth assignments complain of the admission of proof of the acts and declarations of the defendant himself which, if true, were inconsistent with the good faith of his claim of title under the deed to his wife, and were for that reason incompetent.

We do not see the importance of proving what private estate Mrs. Miller had; but, as it might tend to explain why her father allowed her to receive rent for a portion of the premises, perhaps it cannot be said to be entirely irrelevant. But in any event the evidence was of too trifling and insignificant a character to justify a reversal, even if it were wrongly received. The twelfth assignment is therefore dismissed.

The sixteenth assignment is not pressed and is without merit.

The evidence in relation to the death of Mary Miller covered by the seventeenth and eighteenth assignments is of no particular importance; but as the contingency of her death unmarried and without issue increased the interest of A. D. Gyger in the purchase money, under the agreement between him and Dr. Miller, by a special provision in that agreement, which was given in evidence, we cannot say that it was entirely irrelevant to show the exact situation of all the parties interested in that agreement.

The nineteenth assignment is not sustained, because the wealth of John Gyger was not a fact sufficiently relevant to any matter in controversy to require its admission.

The same is true as to the fact of the amount which A. D. Gyger inherited from his father and what he did with it, covered by the twentieth assignment.

The twenty-first assignment is not pressed, nor is the twenty-fifth, and in our judgment neither of them can be sustained.

The offers, the rejection of which is complained of in the twenty-second and twenty-third assignments, were offers to prove by the defendant matters which occurred in the lifetime of John Gyger, and for that purpose the defendant was an incompetent witness.

The twenty-fourth assignment is not pressed and is without merit.

Judgment affirmed.